Cunningham v. Jacobs.

No. 13,829.

## CUNNINGHAM v. JACOBS.

COMMON LAW.—*Presumption that it Prevails in Other States.*—In the absence of any showing to the contrary, the presumption is that the common law prevails in other States.

ATTACHMENT.—*Courts of Other States.*— *Jurisdiction.*— *Presumption.* — The writ of attachment is the creature of statute law, yet where a court of a State in which the common law is presumed to prevail has issued such a writ, in aid of a pending proceeding in which it had jurisdiction of the subject-matter and to which the defendant appeared, it will be, presumed, in an action in this State upon the attachment bond, that the court did not exceed its powers.

SAME.—*Common-Law Bond.*—*Complaint on.*—An action may be maintained in this State upon an attachment bond executed in a proceeding had in the courts of a State in which the common law presumably prevails, without setting out any statute authorizing it to be taken, as such bond will be deemed a common-law bond, and a recovery may be had thereon under the rules applicable to actions on ordinary contracts.

From the Marion Superior Court.

*J. E. McDonald, J. M. Butler, A. L. Mason* and *A. H. Snow,* for appellant.

*J. B. Black* and *H. J. Everett,* for appellee.

COFFEY, J.—This was an action instituted in the Marion Superior Court upon an attachment bond executed in a suit pending in Vermillion county, in the State of Illinois, which bond is as follows :

"*Know all men by these presents,* That we, James A. Cunningham and Amos S. Williams, are held and firmly bound unto Abraham Jacobs in the penal sum of three hundred and twenty dollars and — cents, lawful money of the United States, for the payment of which said sum well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, by these presents. Sealed with our seals and dated this 18th day of January, 1882.

Cunningham v. Jacobs.

"The condition of the above obligation is such, that whereas the above bounden James A. Cunningham has, on the day of the date hereof, prayed an attachment out of the circuit court of Vermillion county, at the suit of himself, against the estate of the above named Abraham Jacobs, for the sum of one hundred and sixty-five dollars and —— cents, and the same being about to be sued out of said court, returnable on the first Monday of February, A. D. 1882, to the term of the said court then to be holden; now, if the said James A. Cunningham shall prosecute his said suit with effect, or in case of failure therein shall well and truly pay and satisfy the said Abraham Jacobs, all such costs in said suit, and such damages as shall be awarded against the said James A. Cunningham, his heirs, executors or administrators, in any suit or suits which may hereafter be brought for wrongfully suing out the said attachment, then the above obligation to be void, otherwise to remain in full force and effect.

(Signed) " J. A. CUNNINGHAM. [SEAL.]
" A. S. WILLIAMS." [SEAL.]

It is averred as a breach of the above bond that the sheriff of Vermillion county, in the State of Illinois, by virtue of the writ of attachment issued in said proceeding, seized the goods and chattels of the appellee of the value of $8,000; that the appellant, Cunningham, did not prosecute his said suit with effect, but that such proceedings were thereupon had in that suit that it was considered and adjudged by the said court and a jury that the appellee was not indebted to the appellant in any sum whatever, and that appellee recover of the appellant his costs therein; that by the wrongful suing out of said writ of attachment appellee was obliged to, and did, expend large sums of money in and about the defence of the said suit, and was thereby deprived of the use and benefit of his said property for one year, and was greatly injured in his credit at said county and elsewhere, and was wholly deprived and prevented from pursuing his business, and his said property so detained was greatly injured and

deteriorated in value, broken, lost, and destroyed ; that he lost three months' time in and about the defence of said suit, all to his damage in the sum of $500, which is due and unpaid.

A demurrer to the complaint for want of sufficient facts to constitute a cause of action was overruled, and the appellant excepted. Upon a trial of the cause the appellee recovered a judgment. .

The only question presented for our consideration relates to the sufficiency of the complaint as a cause of action.

It is contended by the appellant that an attachment proceeding was unknown to the common law, and that to make the complaint good the statute of the State of Illinois, if any exists, should have been set out with the complaint, to the end that the courts here might determine that such a proceeding was authorized by the laws of that State.

In the absence of any showing to the contrary, the presumption is that the common law prevails in the State of Illinois. *Robards* v. *Marley*, 80 Ind. 185 ; *Rogers* v. *Zook*, 86 Ind. 237 ; *Supreme Council* v. *Garrigus*, 104 Ind. 133.

With this presumption before us, we must presume, also, that the circuit court of Vermillion county, in the State of Illinois, is a common-law court, with all the powers, duties and jurisdiction attaching to such a tribunal. Such courts have jurisdiction to hear and determine actions for the recovery of debts, and it affirmatively appears from the complaint before us that this was an action of that kind. The court, therefore, had jurisdiction of the subject-matter of the action.

Had no attachment issued, no question of the power of the court to act would arise, but as an attachment proceeding was instituted in connection with the main action, it becomes necessary to inquire into the nature and origin of the writ of attachment.

The writ of attachment in this country is essentially the creature of statute law. Attachment proceedings are not

Cunningham v. Jacobs.

only utterly devoid of any of the features of the common law, but they are so far in derogation of common right that an appeal to this remedy has never been specially favored by the courts. Attachment amounts to the involuntary dispossession of the owner, prior to any adjudication to determine the rights of the parties. To some extent it is equivalent to execution in advance of trial and judgment. 1 Wade Attachment, section 2.

Ordinarily, attachment proceedings are commenced in aid of an action already pending, or at the time instituted, the object being to make the property available for the payment of any judgment the plaintiff may recover in the main action by seizing the property of the defendant and holding it until the rendition of such judgment. We may assume that such was the object sought to be attained in the suit in which the bond now involved was executed. The question, therefore, arises, did the circuit court of Vermillion county, in the State of Illinois, have jurisdiction to issue the writ of attachment and require the bond which is the foundation of this action?

In the case of Board, etc., v. Markle, 46 Ind. 96, it is said: "Any movement of a court is necessarily jurisdiction. * * 'If the law confers the power to render a judgment or decree, then the court has jurisdiction. What shall be adjudged or decreed between the parties, and with which is the right of the case, is judicial action by hearing and determining it.' * * ' Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether the decision be correct or not, its judgment, until reversed, is regarded as binding in every other court.' * * 'Courts are established for the purpose of administering justice, and it is their duty, so far as they can discover the truth, to decide right. But the power to decide at all necessarily carries with it the power to decide wrong as well as right. In the present imperfect state of human knowledge, a power to hear and determine necessarily carries with it a power which makes the determination obligatory, without any reference to the question

whether it was right or wrong. If this were not so, the judgment or determination of any court would be of no particular value. It might be attacked or avoided at pleasure, upon the ground that the court or judge had committed an error.'"

Assuming that the circuit court of Vermillion county had jurisdiction of the main action, let us suppose that the appellant in this case applied for a writ of attachment upon the ground that the Roman law was in force in the State of Illinois, and made a showing which would have entitled him to the writ under that law. If the court had decided that the Roman law was not in force in that State, and had refused the writ, presuming, as we do, that the common law prevailed there, we would have said that its decision was right. But conceding that it had the right to so decide carries with it the concession that it had the right to decide the other way. So again, by the customs of London, the creditor has, from time immemorial, possessed the right to sue out a writ of attachment against his debtor's property in certain cases. Suppose that the appellant had applied for an attachment against the property of the appellee, upon the ground that the customs of London constitute a part of the common law, and had made a showing which would have entitled him to the writ under such customs. If the court had decided that such customs constituted no part of the common law and had refused the writ, we would have held, doubtless, that such decision was correct. But if the court decided that such customs did constitute a part of the common law, and that they were in force in the State of Illinois, by what rule can it be said that we have the right to call in question the correctness of that ruling and now relieve the parties from the consequences of the error.

It is always to be presumed that everything was rightly done in court, unless the contrary expressly appears by the record; and, as the contrary is not shown, we must presume,

we think, that the circuit court of Vermillion county, in the State of Illinois, did not exceed its jurisdiction.

In addition to what we have said upon the subject of jurisdiction to issue the writ of attachment, it is of importance that we should not omit the fact that it appears by the complaint in this action that the appellee appeared to the action in the State of Illinois, and upon a trial defeated the appellant.

Treating of the subject of jurisdiction, Mr. Drake, in his work on Attachment, section 87, says: " In this connection, therefore, importance attaches to the point whether the defendant was personally served with process in the action. If he was, or if he appeared to the action without service, the cause becomes mainly a suit *in personam*, with the added incident, that the property attached remains liable, under the control of the court, to answer such demand as may be established against him by the final judgment of the court. In such case, if he make no question of the right of the court to exercise jurisdiction over him by attachment, the proceedings, however defective the affidavit, will be valid ; and the rights acquired through them will not depend on the attachment for their validity, but upon the judgment; which, in such case, can not be impeached in any collateral proceeding."

We are of the opinion, therefore, that we must presume that the circuit court of Vermillion county, Illinois, had jurisdiction in the proceeding in which the bond in suit was given. We are not at liberty, however, to presume the existence of a statute under which such bond was executed. If any such statute existed, it was the duty of the party desiring to avail himself of its provisions to bring it before the court in some legitimate mode. As this has not been done, the bond in suit must be treated as having been executed without any statutory authority. The question, therefore, is, is it good as a common-law bond ?

Drake on Attachment, section 151, says : "Where a bond

Cunningham v. Jacobs.

is executed without being required or authorized by any statute, the makers can not defend against it on that ground; it is good as a common-law bond. This was ruled in an action on a bond, given by a plaintiff on commencing a suit by attachment in a circuit court of the United States, and the bond was made to the United States. No law of the United States requiring it, and not being executed in connection with any business of, or any duty of the obligors to, the government, it was contended that it could not be enforced; but the court determined otherwise. So, if the law require the bond to be approved by the court, but if it be approved by a judge in vacation, it is not, therefore, void, but is good as a common-law bond."

That such a bond is good as a common-law bond, see *Turner* v. *Armstrong*, 9 Bradwell, 24; *Sheppard* v. *Collins*, 12 Iowa, 570; *Barnes* v. *Webster*, 16 Mo. 258; *Williams* v. *Coleman*, 49 Mo. 325.

This case is to be distinguished from the cases of *Caffrey* v. *Dudgeon*, 38 Ind. 512, and *State, ex rel.,* v. *Younts*, 89 Ind. 313, and kindred cases. In the case of *Caffrey* v. *Dudgeon*, *supra*, the justice who took the replevin bond had no jurisdiction of the subject-matter of the action, and hence all his acts in the case were void; while in the case of *State, ex rel.,* v. *Younts, supra*, the sale by the commissioner was void, and did not divest the title of the relators, and it would have been manifestly unjust to permit the relators to recover the purchase-price of the land and retain the title. Furthermore, there was no consideration for the bond in that case, and so it could not be enforced as a common-law bond. Such is not the case as to the bond involved in this case. As we have seen, it was taken by a court having jurisdiction of the subject-matter of the action, and by means of such bond the appellant obtained the writ of attachment which he sought, under which the appellee was deprived of the possession of his property. In such case the party executing the bond is

estopped from denying its validity. *Harbaugh* v. *Albertson,* 102 Ind. 69.

In our opinion the bond now under consideration is a good common-law bond. Such being our conclusion, it follows that it was unnecessary to set out any statute under which it was taken, in order to maintain an action thereon.

It is further contended that resort must be had to the statutes of the State of Illinois to determine what amounts to a breach of the bond, and to determine the measure of damages thereunder, and that, as this is true, no action can in any event be maintained thereon except in that State.

As we have reached the conclusion that this is a good common-law bond, it is unnecessary that we should decide what would have been the result had it been shown that it was taken under the provisions of some statute. As a common-law bond, the action upon it is governed by the rules applicable to actions on ordinary contracts. Suit upon attachment bonds, generally, is an action of debt in which it is necessary to aver in the complaint that the damages are due and remain unpaid. Drake Attachment, section 167; *Michael* v. *Thomas,* 27 Ind. 501 ; *Uhrig* v. *Sinex,* 32 Ind. 493.

In our opinion the complaint in this case states a good cause of action, and the court below did not err in overruling a demurrer thereto.

Judgment affirmed.

Filed Oct. 12, 1889.